State of California Department
Corrections and Rehabilitation
Richard J. Donovan Correctional
Facility at Rock Mountain
Mr. ERROL SMITH
CDCR Registry No. #K-62584
Housing Loc: F3-13-141(U)
P.O. BOX 799003
San Diego ,CA 92179-9003



2254 ✓ 1983
FILING FEE PAID
Yes____ No____
IFP MOTION FILED
Yes ✓ No____
COPIES SENT TO
Court ✓ ProSe____

**FILED**

FEB 1 4 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ____ DEPUTY

Petitioner In Propria Persona

IN THE UNITED STATES DISTRICT COURT FOR SOUTHERN DISTRICT OF CALIFORNIA

ERROL SMITH,                    )
      Petitioner,         )
                               )
    vs.                      )
                               )
ROSIE GARCIA, Warden of the    )
Richard J. Donovan Correctional )
Facility at Rock MTN.          )
      Respondent,         )

Case Number **08- CV 0303 JAH LSP**

Petitioner Moves For Excusable And
Equitable Tolling Of The Statue Of
Limitation Pursuant To The Anti Terorism And Effective Death Penalty
Act Of 1996 (Pub. L, 104-132,110
Stat,1214)

Ca .App.2d Crim. No B114703
Superior court No. GA023494

   Now comes petitioner,ERROL SMITH, before this honorable Court
and files this motion for excusable and equitable tolling of the
statue of limitatin, filed concurrently with his habeas corpus
petition.

   Petitioner, a state confined prisoner, represents this matter
pursuant to the full grant of propria persona as ordered by this
instant Court simultaneously to the filing of the matters, states
that both jurisdictiopn and venue are lawful pursuant to Title 28
U.S.C. Section 2254.

//
//
//



ARGUMENTS

I.

## ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT  OF 1996 STANDARD OF   REVIEW  BEFORE THIS INSTANT SUPREME COURT

Petitioner  claims,  and this Court should agree, that petitio-
ner's conviction became final on July 23, 1998 (Title 28 U.S.C. Sec-
tion  2244(d)(1)(A)), and that under Bowen v. Roe, 188 F.3d 1157, at
1160 (9th Cir. 1999), the state habeas statute of limitation did not
begin to run until December 31, 1999.  Therefore, petitioner had un-
til January 2, 2000 to either mail his state or federal Petition for
Writ  of Habeas Corpus or toll the running of the statute of limita-
tion by seeking state collateral review.

Here,  petitioner did not file his state petition with the Fed-
eral  District Court until September 21, 2000 (pursuant to the mail-
box  rule)(discussed,  supra).  Thus,  absent equitable tolling, the
petition  would be untimely by 262 days.  It is petitioner's conten-
tion  that numerous grounds do exist for the excusable and equitable
tolling which this Court may evaluate against the facts inherent  to
prison  confinement  and  the limited opportunities petitioners have
to  "equitably toll" the statute of limitation, discussed in length,
infra.

As  recognized  by the Ninth Circuit, equitable tolling applies
to the statute of limitation for habeas petitions where "extraordin-
ary circumstances beyond a prisoner's control make it impossible  to
file  a  petition  on time." (Calderon v. United States Dist. Court
(Beeler), 128 F.3d 1283, at 1289 (9th Cir. 1997). For equitable tol-
ling to apply,  a petitioner must be able to establish a causal con-

2.

nection between the "extraordinary circumstances" and petitioner's failure to file a timely petition. (Allen v. Lewis, 255 F.3d 798, at 800 (9th Cir. 2001). Because under Allen, a petitioner's inability to file a timely petition must be proximately caused by the alleged "extraordinary circumstances," this Court is requested to consider petitioner's allegations and evidence of tolling which took place between the January 2, 2000, deadline and the September 21, 2000, mixed petition habeas filing before the Federal District Court which was a period of 262 days of unexcused AEDPA lateness.

A. Statement of Facts and Background:

After direct appeal, petitioner sought a Petition for Review before the California Supreme Court, which was denied without citation to authority on September 30, 1998. Applying the ninety (90) day period of certiorari (§ 2244(d)(1)(A)), petitioner sought legal assistance from the National Criminal Justice Reference Service, Rockville, MD., and was referred to the National Association of Legislative Review, Inc., in Russellville, Arkansas.

Petitioner contacted the National Association of Legislative Review, Inc., by letter on August 12, 1999, and requested that he may be accepted into the NALR indigent client status due to his poverty and subsequently receive "pro bono de publico" assistance.

On October 16, 1999, a letter is mailed to petitioner stating that his request was considered and accepted for representation on the basis of "pro bono de publico." (Please see Exhibit A, letter).

On December 2, 1999, NALR President, Brenda Miller, issued a letter to petitioner informing him that they were unable to prepare

3.

or to render assistance until they received the police reports and the Supreme Court Petition for Review. At this point petitioner had issued letters to the Police and Sheriff's Department requesting the copy of the police and supplemental reports. Petitioner also mailed a letter to trial counsel, Rickard Santier, though the letter returned undeliverable as addressed (35 South Raymond Avenue, Pasadena, CA., 91105). Unbeknownst to petitioner, though of no consequence, he incorrectly addressed the last name spelling, which should have been Rickard "Santwier" and whom now practices at 1055 E. Colorado, Suite 310, Pasadena, CA. 91106. Petitioner made such an effort to contact counsel to request what police reports he may have. (Please see Exhibit B, letter(s)).

On January 19, 2000, petitioner mailed a letter to the National Association of Legislative Review, Inc. (hereinafter "NALR"), President Brenda Miller, asking a variety of questions, among which he wanted to know if the petition was filed with the Court. He received no response from Ms. Miller. (See Exhibit C).

On March 12, 2000, petitioner mailed a letter to Ms. Miller as a second request for the same information and an update on what was being done on his habeas matter. Ms. Miller did not respond whatsoever. We remind ourselves that the NALR fully accepted petitioner's matter and granted full-course assistance on the basis of pro bono de publico, and responsible for the preparation, briefing and to in fact file the habeas corpus on his behalf. Petitioner, unfamiliar with anything less than what he was advised in the letter from NALR, had a reasonable expectation that the NALR was performing these

4.

services on his behalf.

Sometime during the month of June of 2000, petitioner and his family tried several times to contact Ms. Miller by telephone, to no avail. Petitioner was told that, for the most part, Ms. Miller was at the Tucker (Arkansas) prison attending "parole eligibility hearings." Telephone messages left at NALR were not responded to. Most of petitioner's calls were also not accepted because applicable NALR Staff were not available. (At all times relevant, petitioner was only permitted access to "collect calling" inmate phones).

Because petitioner had not been able to communicate with NALR and his letters had markedly gone unanswered he decided to terminate the services. On July 26, 2000, petitioner mailed a letter to Ms. Miller informing her that he was aware that the habeas petition had not been filed with the court and demanded his entire record to be returned to him. When he received no response, he issued another letter on August 10, 2000, (referring to the previous unanswered letter) and reminded Ms. Miller that he had little time to file his habeas petition with the court.

Finally, on August 15, 2000, Ms. Miller issued a letter to petitioner as a cover letter attached to the bulk case related documents and apologized for having not prepared his habeas petition in a "timely fashion.

Petitioner received a box containing his files and immediately commenced preparation of his habeas petition. Admittedly, he noticed the research which NALR had prepared (enclosed and interspersed in-between the chronological order of documents). Petitioner prepared

5.

his Petition for Habeas Corpus, inartfully so, and filed it by mail on September 21, 2000. (The petition was filed the moment petitioner gave to a to Correctional Officer for mailing, Houston v. Lack (1988) 487 U.S. 266 [108 S.Ct. 2379]); and Caldwell v. Amend, 30 F. 3d 1199 (9th Cir. 1994); and recognized by this instant Court as the "mailbox rule.").

B. Legal Analysis:

Because the petition, herein discussed, was filed after the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), which was signed into law on April 24, 1996. Petitioner was sentenced July 25, 1997, just over a year after the enactment of the AEDPA as a matter of law and application. The consideration of timeliness is clearly governed by Title 28 U.S.C. § 2244(d), as was amended by the AEDPA. (See Calderon v. United States District Court for the Central District of California (Beeler), 128 F.3d 1283, 1287, fn. 3 (9th Cir. 1997)(we note that Beeler was overturned on other grounds in Calderon v. United States District Court (Kelly), 163 F.3d 530, at 540 (9th Cir. 1998)(en banc). The AEDPA imposes a one-year statute of limitation on habeas corpus petitions filed by state prisoners in the courts. (28 U.S.C. § 2244(d)(1).) That period begins to run from "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." (28 U.S.C. § 2244(d)(1)(A).)

Here, as noted above, petitioner Smith's certiorari period of ninety (90) days covered the period of July 19, 1999 to January 2, 2000 (could not file on January 1, 2000, and carried to the follow-

6.

ing day). Absent or inclusive of the fact that petitioner filed his
Petition for Review with the California Supreme Court is not rele-
vant to the poignant fact that petitioner is to be credited with the
said "certiorari period." (See Brown v. Roe, 188 F.3d 1160 (9th Cir.
1999)(per Rule 24(e) of the California Rules of Court).) Thus, the
date on which the judgment became final by conclusion of direct rev-
iew or the expiration of the time for seeking such review" was nine-
ty (90) days later, on January 2, 2000, when petitioner's time to
petition the United States Supreme Court for writ of certiorari ex-
pired. (Id. at Bowen v. Roe, supra, pp. 1158-1159).

    Consequently, the one-year (1 yr.) limitation period began run-
ning on July 19, 1999, and expired on January 2, 2000. (See Patter-
son v. Stewart, 251 F.3d 1243, at pp. 1245-1246 (9th Cir. 2001)(re-
cognizing Fed.R.Civ.P. 6(a) which governs the calculation of the
relevant limitation period).) Petitioner Smith did not file his
Federal Court habeas petition until September 21, 2000 (pursuant to
the mailbox rule)(Court stamped 09-27-00), which was 262 days after
the limitation period had expired.

    1. Statutory Tolling Under 28 U.S.C. § 2244(d)(2):

    Title 28 U.S.C. § 2244 allows for tolling of the statute of
limitation during the time "a properly filed application for state
post-conviction or other collateral review with respect to the per-
tinent judgment or claim is pending." (28 U.S.C. § 2244(d)(2).) It
is in this exacting context that the limitation clock is stopped
while a petitioner has a habeas claim pending before the California
Court, and from the date of his first state petition is filed until

the date that petitioner is denied. (See Welch v. Newland, 267 F.3d 1013, at pp. 1015-1016 (9th Cir. 2001). There is certainly no tolling between the state's affirmance on direct appeal and the filing of petitioner's first state application for collateral review on the face of this record. (Nino v. Galaza, 183 F.3d 1003, at 1006 (9th Cir. 1999)("[The] statute of limitation is not tolled [during this period] because there is no case 'pending' during [the] interval.").

However, as was discussed above, and supported by the facts as are evidenced in the attached exhibits, petitioner Smith received the pro bono de publico assistance from the NALR to prepare and to file his Federal Petition for Habeas Corpus, a petition that was not properly briefed or filed by the NALR, despite petitioner's every effort and diligence that showed plainly that it was the NALR which simply failed to perform.

Petitioner is entitled to tolling pursuant to 28 U.S.C. § 2244 (d)(2), including Nino, supra, because he fully and reasonably depended on the NALR, Inc. to prepare and to file his proposed and intended Petition for Habeas Corpus. Moreover, and in fact, according to petitioner's letters, it was progressively his belief that the NALR, Inc., had already filed the Petition for Habeas Corpus with the appropriate California Court. (See Exhibit C, for letter).

This Court may agree that petitioner's expectation was reasonable, which is a position that is also consistent with petitioner having attached numerous documents to this motion as supporting exibits and is a demonstration all to itself of his diligence, as well as his own frustration of not understanding whether or not his state

8.

collateral review was filed, believing only that the NALR, Inc.  was
the "Captain of the ship" and trusted that their staff was firmly at
the helm.

Quite persuasively in  this  regard is the fact that petitioner
made  it his every effort to "timely" secured the "no cost pro bono"
legal services of the NALR, Inc., whom he reasonably trusted to per-
fect the Petition for Writ of Habeas Corpus.

In response  to NALR, Inc. accepting petitioner's matter at "no
cost" and  then not perfecting the petition timely, petitioner began
doing  what  he  could to  obtain  the case records from the Police,
Sheriff's Department, trial counsel Rickard Santwier, and to finally
recover  the case records from the NALR, Inc., which occasioned some
minimal delay.

It  is clear from petitioner's "letters," including the letters
issued by the NALR that there was little that petitioner could do to
encourage NALR President Miller to provide the services they assured
petitioner they would give to him and freely or, in the alternative,
to force counsel to return the records to petitioner so that he cou-
ld  perfect  his  own  Petition for Writ of Habeas Corpus before the
Court.

Petitioner, both on his own and through the help of his family,
sought  clarification from President Miller as to what they were do-
ing  on his matter, of which petitioner even expressed concern about
running  afoul  of  the  statute  of limitation that applies to both
state and federal petitions where he said "I need to know if I still
have time . . ."  (See Exhibit D, for letter). The letters which are

9.

lodged here as Exhibits by the National Association of Legislative Review, Inc., are self-reliant on the state of this case and a clear showing of petitioner's extraordinary circumstances which were beyond petitioner's control that directly caused petitioner to file an untimely petition. Therefore, this reviewing Court should find sufficient grounds, here, which warrant the equitable tolling of the AEDPA statute of limitation, and by ruling that the petition filed with the Federal District Court on September 21, 2000, was timely and should not have been ruled untimely by the Federal Court (in USDC/C.D. CV 00-10363-AHM-AIJ and related case CV 98-3573).

After the time that petitioner had prepared on his own and then filed his Petition for Writ of Habeas Corpus with the Federal District Court, the Court labored with the question of (a) timeliness, and (b) exhaustion of each claim, and determined 533 days later that the petition was mixed (which was correct) and untimely by as much as 262 days. At this point petitioner did not know what to do. Of course, petitioner is not a lawyer, hasn't any training in law, though he is aware that his habeas pleading thus far have been inartfully prepared, untimely and claims presented which were categorically mixed as a matter of law.

At the time that the Federal Court surmised the petition to contain exhausted and unexhausted claims, including the fact that he was unexplainably late as much as 262 days, petitioner simply did not know what to do. In the quandary of being between a hard place and a rock, he returned to the National Association of Legislative Review, Inc., and requested them to continue with his matter and to

10.

cure the filing and late deficiencies of his Federal Court petition.

Exhibit E is a letter from the NALR which shows in explainable and sufficient details the circumstances which account for the past years of legal services neglect of petitioner's case which simply fell through the cracks of a system just rife with legal malpractice and petitioners', including petitioner, doesn't stand a chance to receive his "day" in Court because he never knew enough law to know whether or not he was receiving a just resolve and the legal services provided, either paid or indigently rendered, never materialized a defense to the criminal judgment whatsoever. It is undisputed that the NALR, Inc. was the Captain of the ship, though it was petitioner who went down with the vessel when it sunk, and not the legal services which failed him.

Even for sake of arguendo, had the NALR, Inc. failed to perform services, or deliberately failed to perfect same, does nothing to in fact change the posture that petitioner was justifiably untimely at the time that the Federal District Court ruled him critically untimely and irrevocably accessible to a decision as to the merits of the case. Following the absence of any explanation as to just why petitioner was untimely before the Federal Court, the NALR then by unavoidable inadvertence permitted petitioner's case to merely languish to date. Though wherever one may throw the blame, in cannot be even remotely construed blame on petitioner, for no amount of diligence could petitioner have done more than he has done, under the exacting circumstances here.

2. <u>Equitable Tolling</u>:

11.

The statute of limitation is also subject to equitable tolling. (Beeler, supra, 128 F.3d at 1288). The Ninth Circuit had made it clear, however, that equitable tolling is "unavailable in most cases," Miles v. Prunty, 187 F.3d 1104, at 1107 (9th Cir. 1999), and is appropriate only "if 'exceptional circumstances' beyond a prisoner's control makes it impossible to file a petition on time." (See Beeler, supra, 128 F.3d at 1288). The term "extraordinary circumstances" has been limited to circumstances where external forces had caused the late filing, rather than a petitioner's lack of diligence. (See Miles, supra, 187 F.3d 1107 (granting equitable tolling where prison authorities had failed to follow prisoner' s request to withdraw the filing fee for his habeas petition from his prison trust account and mail his check and petition to the District Court for filing).

Petitioner states that he is entitled to equitable tolling because he was certainly mislead by the National Association of Legislative Review, Inc. in regards to the application of the AEDPA's statute of limitation period when Ms. Miller failed to prepare the the very petition which the NALR was also responsible for filing it "timely" with the Courts.

Petitioner's allegations, here, are sufficient to satisfy this burden under Beeler, inasmuch as that showing demonstrates that the circumstances, here, were extraordinary and had went beyond petitioner's control, and in the mishandled process made it impossible for him to fully "exhaust each of his claims" before the California Suprme Court and then to file his petition on time before the Federal

12.

District Court  for  purpose of being timely pursuant to the AEDPA's
statute of limitation.

Petitioner is not a person who can be viewed as trained in law,
was  certainly  not aware of the AEDPA of 1996 provisions of timeli-
ness, and was unfamiliar with court pleading requirements.  Petitio-
ner  also  clarifies that while he was housed at the Centinela State
Prison,  and  during the time that he has since been confined at the
CSP-Los Angeles  County  Prison,  he has, and was, subjected to fre-
quent  and  punctuated prison lockdowns, and that at such times that
he  was not on temporary or long term prison lockdowns he was not in
fact  aware  of any posted materials regarding the said AEDPA.  More
succinctly,  petitioner did not even know about the AEDPA timeliness
until  the  Federal  District  Court  ruled that he was untimely and
dismissed  the petition "fifty-five entries later" on March 6, 2002,
and  the  last date of court activity finalizing the denial of peti-
tioner's  request  for  Certificate  of  Appealability and Notice of
Appeal on June 21, 2002.

Petitioner also endured  a transfer from one prison to the next
when  he was transferred to the CSP-Los Angeles County Prison (Lanc-
aster)  where he subsequently had no access to his personal or legal
property,  no use of a telephone during the time he was in orientat-
ion transition.  Because petitioner was accepted into the NALR, Inc.
"indigent"  and "pro bono de publico" program, there was no need for
him to  learn or know the law.  He had no need to listen to the adv-
ice  of  inmates  on  the prison  yard who claimed they were skilled
jailhouse  lawyers.  The facts analogous to the matters here demons-

13.

trate that petitioner had good cause to completely rely on the ser-
vices of the NALR and both reasonably and rationally trusted in the
services to the extent that he did. (See Exhibits for applicable
to and from letters).

A review of the supporting exhibits shows that petitioner had
been approved by the NALR, Inc. for services within the AEDPA time
limitation, though for reasons not exactly known to date, the NALR
failed to produce and to file the habeas petition, and even towards
the end they were reluctant to return petitioner's files after two
to three months of written and telephonic demands. As this Court is
abundantly aware, the NALR is very much that "captain" of the ship,
and even where petitioner may intervene into such a "tactical per-
formance, the court would be quick to inform petitioner to do noth-
ing and simply let the NALR do the legal navigating. However, in
the matters here, petitioner reasonably shows four things: (1)
that petitioner contacted the NALR to represent the production of
his habeas corpus filing; (2) was accepted as an indigent client
on the basis of pro bono de publico services; (3) trusted and reli-
ed upon the NALR and its staff; and (4) that the NALR had fully al-
lowed petitioner's matters to languish, to no fault of petitioner.

Petitioner admits to being at some loss to know just where
this Court will draw the line between NALR's failure and petitio-
ner's diligence to do something about it. The crux remains, deter-
minative of this Court's findings; was petitioner at fault for this
delay while, at all times relevant, NALR was the captain of the
ship that fully ignored the dangers ahead when deliberately neglec-

14.

ting the "timeliness" of petitioner's AEDPA statute of limitation with which to bring his habeas corpus before this Court.

## CONCLUSION

For the reasons based above, petitioner prays that this honorable Court will rule that the extraordinary circumstances were the but-for and proximity cause for his untimeliness and that the neglect of NALR litigation services made it virtually impossible for him to file this state habeas petition on time, and for purpose of complete exhaustion of unexhausted state court claims. (Beeler, supra, 128 F.3d at 1288).

That this Court may take appropriate notice of the communications petitioner had with the National Association of Legislative Review, Inc., and the fact that there was virtually no communication with NALR President for considerable periods of time despite the fact that petitioner posted letters to that office. One only needs to be sophomoric enough to remind ourselves of the rights of petitoners' with such legal services which animate this instant case and with a philosophical underpinning which the NALR, Inc. and its staff so myopically ignored.

I, the undersigned1 declarant, declare under the penalty of perjury and the laws of the State of California, that the statement herein provided is both true and correct to the best of my knowledge, information and belief, except to such matters based only on information and as to such averred upon belief, and as to those matters I believe them to be critically true and correct. This document may be deemed as a notarized statement, though not norm-

ally   required   by the Court where there are no services affordable
to   an   incarcerated   person, and such service is practically never
provided  as a free service to prisoners.   Under the provisions  of
Title  28  U.S.C.  Section  1746  and CCP Section 2015.5, the above
stated   information   may   be   substituted   for notarization in most
cases where   it is may be required.   PETITIONER   FURTHER SAYETH NA-
UGHT,   this _13_ day   FEBVARY 2008 AT DONAVAN STATE PRISON.

                                       Respectfully submitted,

DATED:   2-13-2008

                                       _____
                                       ERROL D. SMITH, Petitioner

                                       In Propria Persona

                                       California Penal Code § 1258

16.

# EXHIBIT   A

**NALR BOARD OF DIRECTORS**

Brenda L. Miller
President and CEO

Madeleine G. Harris
Exec. Vice-President

Beverly Mowery
Senior Vice-President

James T. McBride
Vice President

Dale Finley
Attorney

**General Staff Positions**

NALR Senior
Investigative Team

NALR General
Investigative Team

Senior Staff Attorney
General Staff Attorney
Regional Attorneys

Litigation Coordinator
Desk five-Jails
Desk six-Prisons

Complaint Coordinator
Desk

Cultural Diversity
Coordinator Desk

Prisoner Correspondence Desk

Public Relations Spokesman

Senior Business Manager
& Political Analyst

**NALR SPECIAL COMMITTEES:**

Board Coordinated
Committee For Prisoner
Humanity & Justice (CPHJ)

Committee Against
Mandatory Minimums

Committee To Abolish
The Death Penalty

Custodian of Records
& Notary Services

Special Projects
Coordinator's Desk

Legal Pad Perspectives
Advocacy Newsletter Desk

Subscriptions/Forms &
Mailing List Desk

**In Remembrance**
Justice Harry Blackmun
(1908-1999)

NALR is the logo and service mark
owned and used by the National
Association of Legislative Review
(NALR).

Registered/Bonded in the County of
Pope and the State of Arkansas

(NALR 586.1[a])

# NATIONAL ASSOCIATION OF LEGISLATIVE REVIEW (NALR)

NORTHERN DISTRICT OF THE STATE OF ARKANSAS
POST OFFICE BOX 3064, RUSSELLVILLE, AR 72801-9998
DIRECT PHONE (501)964-0020  FAX (501)964-0940
HOMEPAGE www.nalr99.com  AND  E-MAIL nalr@cswnet.com

CONFIDENTIAL LEGAL MAIL                    October 16, 1999

California State Prison System
Centinela State Prison Facility
Mr. Errol D. Smith, CDC #K-62584
2302 Brown Road, P.O. Box 921
Imperial, CA. 92251-0731

Re: People v. Errol Smith, Superior Court Case No. GA023494

Dear Mr. Smith:

Thank you for your letter dated August 12, 1999, which was received by our office on August 17, 1999, and forwarded to my desk for response.

I have reviewed your letter with much interest and found compelling reason to believe that your culpability in the allegations against you did not warrant the sentence you have received in that matter. I have discussed your matter with my litigation staff and am delighted to inform you that your case is one which we would like very much to assist in your efforts to redress the excessive sentencing.

First, please allow me to apologize in our delay in answering your letter. Our office receives hundreds of letters each month and it often takes all that we can do just to keep current in answering most of these letters.

I am enclosing our standardized prisoner questionnaire form, along with an authorization for release of records. You will need to fill out the questions and sign the authorization form and return it to our office by and through legal mail, because it is confidential. At that time we will assign you what is called a client sequence number and our services based on pro bono de publico. This means you will not be required to pay costs for our time or resources and we will thoroughly look into your matter just as soon as you make the records available for our inspection.

Thank you for your letter of August 12, 1999, and I will be anticipating your response to the above at your earliest convenience. It will be incumbent upon you to answer as many questions as possible on the NALR Questionnaire so that we have as much infor-mation about you and your case as is possible.

-1-

Continued from p. 1
PRO BONO DE PUBLICO ASSISTANCE
ERROL SMITH
10-16-99:

    Please be sure to inform NALR in any event you are transferred to any other prison or inter-prison facility.  You should always place your cell or room location on your mail as well so that we have your complete address.

    On last note please be advised that the reason we do not accept collect telephone charges from prisoners in California (or Arkansas) is because we operate on a very small budget just to keep the lights on.

                          Very truly yours,

                          Brenda L. Miller
                          President and CEO

NALR/INITI:BLM:dt

cc: File (flimsy)
    Prisoner Correspondence Desk Six

NO ENCLOSURES

-2-

# EXHIBIT    B

NALR BOARD
OF DIRECTORS

Brenda L. Miller
President and CEO

Madeleine G. Harris
Exec. Vice-President

Beverly Mowery
Senior Vice-President

James T. McBride
Vice President

Dale Finley
Attorney

General Staff Positions

NALR Senior
Investigative Team

NALR General
Investigative Team

Senior Staff Attorney
General Staff Attorney
Regional Attorneys

Litigation Coordinator
Desk five-Jails
Desk six-Prisons

Complaint Coordinator
Desk

Cultural Diversity
Coordinator Desk

Prisoner Correspondence Desk

Public Relations Spokesman

Senior Business Manager
& Political Analyst

NALR SPECIAL COMMITTEES:

Board Coordinated
Committee For Prisoner
Humanity & Justice (CPHJ)

Committee Against
Mandatory Minimums

Committee To Abolish
The Death Penalty

Custodian of Records
& Notary Services

Special Projects
Coordinator's Desk

Legal Pad Perspectives
Advocacy Newsletter Desk

Subscriptions/Forms &
Mailing List Desk

In Remembrance
Justice Harry Blackmun
(1908-1999)

NALR is the logo and service mark
owned and used by the National
Association of Legislative Review
(NALR)

Registered/Bonded in the County of
Pope and the State of Arkansas

(NALR 586.1[a])

# NATIONAL ASSOCIATION OF
# LEGISLATIVE REVIEW (NALR)

NORTHERN DISTRICT OF THE STATE OF ARKANSAS
POST OFFICE BOX 3064, RUSSELLVILLE, AR 72801-9998
DIRECT PHONE (501)964-0020  FAX (501)964-0940
HOMEPAGE www.nalr99.com  AND  E-MAIL nalr@cswnet.com

CONFIDENTIAL LEGAL MAIL                    December 2, 1999

California State Prison System        Seq. No. 99-176(CA)
Centinela State Prison Facility
Mr. Errol D. Smith
CDC No. #K-62584
2302 Brown Road, P.O. Box 921
Imperial, CA. 92251

Ref: Peo. v. Smith, Superior Court Case No. GA023494

Dear Mr. Smith:

    This will acknowledge that we have received your case related
documents and thank you for being as attentive in getting the
records to us in a timely fashion.

    I have reviewed the documents and found amiss any of the police
reports and the California Supreme Court Petition For Review which
you claim your attorney Shaver had filed on your behalf last year. I
would assume that if you do not have these particular records that
you might retrieve them from your trial counsel and a copy of the
petition from the attorney Shaver?

    Without these records we are unable to research your case and
will not be able to prepare your habeas petition. If you need us to
call someone or to assist you in your efforts to collect these
missing documents, please do not hesitate to inform me. Your response
is awaited for at your earliest opportunity. Whenever you communicate
with NALR, please be sure to indicate your NALR Client sequence
number at the top of the first page of your letter. That number is
99-176(CA).

                              Very truly yours,

                              *Brenda Miller*

                              Brenda L. Miller
                              President and CEO

NALR/INVESTI:BLM:dt

cc: Sequence file 99-176(CA)
    Prisoner Correspondence Desk 6

Enclosure 1 small 2000 Calendar

December 20, 1999

Attorney at Law
RICKARD SANTIER
35 S. Raymond Ave.
Suite 301
Pasadena, CA 91105

Dear Mr. Santier,
    I am writing to your immediate attention in my need to get from you a complete copy of all my files and records that you may have about my case so that I can have my habeas corpus filed. I alredy have a law firm to do the petition because you know I don't know law and it must be done right away so I request that you mail all of my files and papers to the national Association of Legislative Review, Inc. at P. O. Box 3064, Russellville, Arkansas 72801-9998 or call them (501) 964-0020 and only talk to the President Miller.    I need this done right away because they can't do anything till you get the records to them. I am sending all of my documents to them but what they want is the police reports and the petition for review.    Thank you for your help in this request.

Respectfully submitted,


Errol Smith

COPY IN FILE ✓

# EXHIBIT   C

JAN. 19, 2000

THE NATIONAL ASSOCIATION OF LEGISLATIVE REVIEW, INC.
NORTHERN DISTRICT OF ARKANSAS
ATTN: BRENDA L. MILLER, PRESIDENT
P.O. BOX 3064
RUSSELLVILLE, AR. 72801-9998

CASE NO. 99-176(CA)

DEAR MRS. MILLER,
    I NEED TO TELL YOU THAT I WISH TO KNOW WHAT IS HAPPENING WITH MY CASE
AND ARE WE NOW READY TO FILE IT IN THE RIGHT COURT OR HAS IT BEEN FILED NOW?
I DON'T WANT TO BE PUSHY BECAUSE I AM NOT PAYING FOR YOUR ASSISTANCE BUT I
NEED TO FILE THIS PETITION AND HAVE THE COURT GRANT IT. YOU MIGHT TELL ME WHAT
THE PROGRESS IS AND HOW SOON DO WE THINK I CAN GET A RESPONSE FROM THE COURT.
I WOULD ALSO LIKE TO READ WHAT YOU HAVE FILED WITH THE COURT SO I CAN KNOW
WHAT MY GROUNDS FOR CLAIMS ARE. WHEN YOU WRITE BACK PLEASE TELL ME WHICH COURT
THE HABEAS CORPUS PETITION WAS FILED INTO AND WILL THAT COURT ANSWER TO ME OR
TO YOUR OFFICE AND THEN YOU CAN TELL ME WHAT THEY SAID? I DON'T KNOW ANYTHING
ABOUT THESE THINGS SO I WILL WAIT TILL I GET CONFIRMATION FROM YOU AS TO WHAT
IT ALL MEANS. THANK YOU FOR YOUR TIME IN ALL. PLEASE WRITE ME RIGHT BACK.

RESPECTFULLY SUBMITTED:

ERROL SMITH

# EXHIBIT D

JULY 26, 2000

THE NATIONAL ASSOC. OF LEGISLATIVE REV., INC.
NORTHERN DISTRICT OF ARKANSAS
TO: BRENDA MILLER, NALR PRESIDENT
P.O. BOX 3064 RUSSELLVILLE, AR 72801

MY CASE NUMBER: 99-176(CA)

DEAR MRS. MILLER:
      I WROTE TO YOUR OFFICE ON JANUARY 19, 2000 AND DID NOT HEAR ANYTHING
BACK. AND THEN I WROTE AGAIN ON MARCH 12, 2000 BECAUSE I NEED TO KNOW IF
THE PETITION IS FILED WITH THE COURT AND WHAT THAT COURT NAME AND ADDRESS
IS TO. LAST MONTH MY FAMILY CALLED YOUR OFFICE A BUNCH OF TIMES AND THEY
KEEP SAYING THAT YOU ARE OUT AT THE TUCKER STATE PRISON WITH NALR ATTORNEY
DALE FINLEY DOING PAROLE HEARINGS TO GET YOUR CLIENTS OUT OF PRISON EARLY
BUT NO ONE RETURNED MY FAMILY'S CALLS AND NO MAIL FROM NALR.  I CANNOT
GET THROUGH ON THE PHONE WHEN I CALL BECAUSE THE CALL IS NOT ACCEPTED. I
KNOW THAT THE PETITION HAS NOT YET BEEN FILED HERE IN CALIFORNIA AND YOUR
OFFICE WILL HAVE TO RETURN MY FILES SO I CAN TRY TO DO THIS ON MY OWN
BECAUSE I NEED THE COURT TO MAKE A DECISION IN MY CASE. I WILL NEED ALL
OF MY FILES AND THINGS BACK RIGHT AWAY SO I CAN DO SOMETHING ON MY OWN THIS
IS TAKING TO LONG TO GET IT DONE. THANK YOU AND PLEASE ANSWER SOON NOW. I
NEED TO KNOW IF I STILL HAVE TIME TO EVEN DO THIS ON MY OWN.
RESPECTFULLY SUBMITTED,


ERROL SMITH

copy

501 964-0940

# EXHIBIT   E

**NALR BOARD OF DIRECTORS**

**Brenda L. Miller**
President and CEO

**Madeleine G. Harris**
Exec. Vice-President

**Beverly Mowery**
Senior Vice-President

**James T. McBride**
Vice President

**Dale Finley**
Attorney

*General Staff Positions*

NALR Senior
Investigative Team

NALR General
Investigative Team

Senior Staff Attorney
General Staff Attorneys
Regional Attorneys

Litigation Coordinator
Desk five-Jails
Desk six-Prisons

Complaint Coordinator
Desk

Cultural Diversity
Coordinator Desk

Prisoner Correspondence Desk

Public Relations Spokesman

Senior Business Manager
& Political Analyst

**NALR SPECIAL COMMITTEES:**

Board Coordinated
Committee For Prisoner
Humanity & Justice (CPHJ)

Committee Against
Mandatory Minimums

Committee To Abolish
The Death Penalty

Custodian of Records
& Notary Services

Special Projects
Coordinator's Desk

Legal Pad Perspectives
Advocacy Newsletter Desk

Subscriptions/Forms &
Mailing List Desk

In Remembrance
Justice Harry Blackmun
(1908-1999)

NALR is the logo and service mark
owned and used by the National
Association of Legislative Review
(NALR)

Registered/Bonded in the County of
Pope and the State of Arkansas

(NALR 586.1[a])

# NATIONAL ASSOCIATION OF LEGISLATIVE REVIEW (NALR)

NORTHERN DISTRICT OF THE STATE OF ARKANSAS
POST OFFICE BOX 3064, RUSSELLVILLE, AR 72801-9998
DIRECT PHONE (501)964-0020   FAX (501)964-0940
HOMEPAGE www.nalr99.com  AND  E-MAIL nalr@cswnet.com

NALR Sequence No. 99-176(CA)

CONFIDENTIAL LEGAL MAIL              August 15, 2000

Dear Mr. Smith:

I am really very disappointed in not having answered your letters recently. I received your mail which was awaiting my return from a Texas Death Penalty Seminar and a leave of absence from NALR. Actually there are five letters from you and I do not mind your writing as often as you can, though it did catch us all off base because your file is still not complete.

Please let me answer some portions of these letters so to settle your concerns. I realize you are upset and this is very frustrating for you to understand, but these things always takes time. We have not prepared your petition as of date because we have not received all the records in your matter.

Your concern that there is some sort of "time frame" and that we are not responding in a timely fashion is misplaced, I believe. There is no time limitation as to filing your habeas petition in the court. However, because you have absolutely demanded the return of your active case records, I have no quarrel in doing just that, though as reluctant as I am because we have already commenced the briefing on some of the claims.

Please find enclosed all of the bulk record we had in file on your case. I admit that we could have prepared the matter in a more timely fashion, though because we were not under any time-controlling limitations we acted accordingly. I am sorry this has disappointed you because we wanted to do something on your case and be the assistance that your case warranted.

*NO TIME LIMIT AT ALL* (handwritten annotation)

I wish you the best of fortune in your efforts.

Very truly yours,

*Brenda Miller*

Brenda L. Miller
President & CEO

NALR/INVESTI:BLM:cw

ENCLOSURE CERTIFIED MAIL/BULK RECORDS

**NALR BOARD OF DIRECTORS**

Beverly Mowery
President and CEO

Participating in the
Judicial Process with
Legislative Intent

**BOARD CERTIFIED**
**REGISTERED CP00171911**

General Staff Positions

NALR Senior
Investigative Team

NALR General
Investigative Team

Senior Staff Attorney
General Staff Attorney
Regional Attorneys

Litigation Coordinator
Desk five-Jails
Desk six-Prisons

**Alternate Sentencing**
**Review Board**

Cultural Diversity Coordinator Desk

Prisoner Correspondence Desk

Public Relations Spokesman

**Amicus Curiae Board**

**NALR SPECIAL COMMITTEES:**

Board Coordinated
Committee For Prisoner
Humanity & Justice (CPHJ)

Committee Against
Mandatory Minimums

Committee To Abolish

The Death Penalty

Custodian of Records
& Notary Services

Special Projects
Coordinator's Desk

Legal Pad Perspectives
Advocacy Newsletter Desk

Subscriptions/Forms &
Mailing List Desk

**In Remembrance**
**Justice Harry Blackmun**
**(1908 - 1999)**

**Justice Stanley Mosk**
**(1912-2001)**

NALR is the logo and service mark
owned and used by the National
Association of Legislative Review
(NALR)

Registered/Bonded in the County of
Pope and the State of Arkansas

(NALR 586.1 (a))

# NATIONAL ASSOCIATION OF
# LEGISLATIVE REVIEW (NALR)

NORTHERN DISTRICT OF THE STATE OF ARKANSAS
POST OFFICE BOX 3064, RUSSELLVILLE, AR 72801-9998

NALR Sequence No. 99-176(CA)                    DIRECT DIAL NUMBER

Ref. No.  02-237(CA)                            AC(501) 964-0020, Ext. 2

CONFIDENTIAL LEGAL MAIL                          September 30, 2005

California Department of                         Seq. No. 99-176(CA)
Corrections
CSP-Los Angeles County
Attn: ERROL SMITH
CDC No. #K-62584
44750 60th Street West
Lancaster, CA. 93536-7620

Dear Mr. Smith:

Your letter dated August 10, 2005 has been received by the
NALR Prisoner Correspondence Desk and forwarded to me for
response.

I have thoroughly reviewed your file and take note that your
case was being handle by Brenda Miller of our office and that
litigation was briefing your habeas petition in forma pauperis
of your indigency status.  From what I have gathered, your case
was initially prepped under the above sequence number, which was
then given a second number of 02-237 with a notation entry that
your case was before NALR on two separate occasions.

Brenda Miller left NALR in 2004, and I have since taken the posi-
tion of NALR's President.  I was unaware that we even had your
case until we received your letter of inquiry.  As a result of
past President Miller's departure from NALR there were three cases
which unavoidably languished in the interim.  In addition to
past President Miller's leaving NALR, we have also lost the grant
which enabled us to accept pro bono cases.  Moreover, we are not
in any position to assist matters which are out of jurisdiction.

In the event that you need a document from NALR to account for
the above activity, please do not hesitate to communicate same to
NALR, my attention.  In the meantime, I will take the liberty to
return your files to you.  I do apologize for the substantial
delay this has caused you.

Cordially,

*B. Mowery*

Beverly Mowery, President

cc: file

RETURN OF DOCUMENTS